CONTINENTAL INSURANCE COMPANY et al *v.*
Mary Lou RICHARD, Administratrix of the
Estate of Frank V. RICHARD, Deceased

CA 79-259                                    596 S.W. 2d 332
Court of Appeals of Arkansas
Opinion delivered February 20, 1980
Rehearing Denied March 19, 1980
Supplemental Opinion on Denial of Rehearing delivered
March 19, 1980
Petition for Review Denied March 24, 1980
Released for Publication March 26, 1980

672

*Chester C. Lowe, Jr.,* for appellants.

*Shackleford, Shackleford & Phillips,* P.A. for appellee.

JAMES H. PILKINTON, Judge. This is an appeal by the Continental Insurance Company and The El Dorado Hunting Club, Inc., from a decision of the Arkansas Workers' Compensation Commission which found that Frank V. Richard sustained a work related accidental injury arising out of and in the course of his employment with El Dorado Hunting Club. The Commission also determined that the estate of Frank V. Richard, deceased, was entitled to reimbursement for certain medical and funeral expenses, and that Mary Lou Richard, as guardian of the person and estate of his minor son, was entitled to receive dependency benefits for the child. Appellants question the findings and awards made by the Commission.

I

Appellants first argue that the evidence is insufficient to support the finding by the Commission that the injury and death of Frank V. Richard arose out of and in the course of his employment with The El Dorado Hunting Club.

Frank V. Richard and Mary Lou Richard were married in Las Vegas, Nevada, in 1960. In 1966 Frank Richard purchased equipment and merchandise of a business known as the Embers Steak House in El Dorado, Arkansas. He leased the premises from one Ira Craig. Frank and Mary moved to El Dorado and operated the restaurant. Unfortunately, the restaurant did not do well financially.

In 1966, a nonprofit corporation known as The El Dorado Hunting Club was chartered. In 1971, the incorporators transferred their charter to Frank and Mary Richard. Frank and Mary Richard solicited membership in the club, and obtained over one hundred dues-paying members. Amended Articles of Incorporation were filed with the Secretary of State, and Frank Richard, William Richard and Mary Richard were elected to the Board of Directors of the corporation. At a meeting of the Board of Directors, Frank Richard was appointed General Manager of the corporation at a salary of $350.00 per month. In addition, the Board allowed Frank Richard to reside on the premises and take his meals there. It is undisputed that this had a value of

an additional $350.00 per month, making Frank Richard's salary from the corporation $700.00 per month. Frank Richard leased certain personal property and equipment to the corporation and subleased to the corporation the premises he had under lease from Ira Craig.

Frank Richard and Mary Richard were divorced and Frank Richard remarried. Prior to his death, Frank Richard had divorced his second wife; and thereafter Mary Richard again became a director of the corporation and also an employee thereof.

The duties of Frank Richard embraced bartending, purchasing food and liquor, hiring and firing of other employees and general managerial duties.

On October 16, 1976, Frank Richard was assaulted by an intoxicated member of The El Dorado Hunting Club, Inc., whom he had ejected from the premises. As a result of the assault Frank Richard died on October 18, 1976.

The court on appeal is required to review the evidence in the light most favorable to the findings of the Commission, and give the testimony its strongest probative value in favor of the order of the Arkansas Workers' Compensation Commission. The issue on appeal is not whether this court would have reached the same results as the Commission on this record, or whether the testimony would have supported a finding contrary to the one made; the question here is whether the evidence supports the findings which the Commission made. *Herman Wilson Company* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487 (1968). When the Commission makes a finding of fact, that finding carries the weight of a jury conclusion. *Taylor* v. *Plastics Research and Development Corp.,* 245 Ark. 638, 433 S.W. 2d 830 (1968). The decision of the Commission must stand if supported by substantial evidence. *American Can Co.* v. *McConnell,* 266 Ark. 741, 587 S.W. 2d 583 (Ark. App. 1979).

The sole basis for the argument of appellants that the appellee is not entitled to benefits is based upon a proposition that during the last three years of his life Frank Richard filed

tax returns reflecting a sole proprietorship. As stated by the Workers' Compensation Commission, this is a matter between the decedent's estate and the Internal Revenue Service and not the Arkansas Workers' Compensation Commission. An extremely similar argument was recently raised before the Arkansas Supreme Court, and such argument was rejected by it. *Henry et al* v. *Goodwin et al,* 266 Ark. 95, 583 S.W. 2d 29 (1979). In that case, Mrs. Goodwin conveyed real property to her niece (Mrs. Henry) pursuant to an agreement whereunder her niece would reconvey the property. The purpose of the arrangement was to make Mrs. Goodwin eligible for supplemental social security benefits. After the niece died, an action was commenced to determine ownership to the land by the heirs of the niece. The heirs argued that since Mrs. Goodwin apparently misrepresented her position (relative to ownership of any real property) to the Social Security Administration she became precluded from asserting her ownership to the land by estoppel or the clean hands doctrine. In rejecting this argument, the Supreme Court said:

> Of course, what we say in this opinion is not binding upon the Social Security Administration, which is not a party to this case and may be in a position to recover whatever payments were made to Mrs. Goodwin. We cannot say, however, in balancing the equities, that Mrs. Goodwin's conduct was so reprehensible that she should lose the property which she has apparently occupied as her home since 1913.

In the case at bar, as in the *Henry* case, *supra,* the issue becomes whether the action of Mr. Richard in filing an erroneous tax return would preclude his dependent from workers' compensation benefits. It might in some circumstances, but in this case, as in the *Henry* case, *supra,* the record does not disclose the applicable regulations. The record also does not disclose the reasons for Mr. Richard's filing the particular returns in the manner in which he did. The bare tax returns were introduced. It is conceivable that the particular filing was done at the insistence or upon the advice of an auditor or accountant, to take advantage of particular legal tax loopholes. We do not know why the filings were

done in the way in which they were. We do know that the filings were prepared by a certified public accountant, William P. Cook. This is confirmed by his signature as the preparer. Certainly, there is no evidence that this Court could hold that Mr. Richard's conduct was so reprehensible that his child should lose the workers' compensation benefits to which he is otherwise entitled. In the face of the written contract of hire, the existence of the corporate entity which was the employer, and *all* the testimony in the record, the appellants assert in this Court that because of the filings with the IRS the minor child of the decedent should be denied benefits. This argument wilts under scrutiny.

Ark Stat. Ann. § 81-1302(a) (Repl. 1976) defines "employer" to be any individual, partnership, association or *corporation* carrying on any employment. There was introduced into the record Articles of Incorporation of The El Dorado Hunting Club, Inc., together with a certificate from the Secretary of State, State of Arkansas, that the articles and amended articles had been duly filed in such office. There is no dispute that Continental Insurance Company insured the employer, The El Dorado Hunting Club, Inc., within the meaning of the Arkansas Workers' Compensation Act on the date of Mr. Richard's death.

Ark. Stat. Ann. § 81-1302(b) of the Workers' Compensation Act defines "employee" to be any person in the service of an employer under any contract of hire or apprenticeship, whether written or oral, expressed or implied. There was an expressed, written contract of hire which is contained in a corporate minute book, duly introduced into evidence, showing that the Board of Directors employed Frank Richard as General Manager.

It is true that Frank Richard was a corporate officer of the respondent employer. However, he was also a bartender, cook, door checker, bouncer, and supervisor of other employees. As stated by Professor Larson, when a corporate officer's duties involve distinctly nonexecutive, nonsupervisory or even manual work, the compensation act should apply. *Larson, Workmen's Compensation,* § 54.20, Corporate Officers. Professor Larson goes on to say, at the same section:

"With very little difficulty, the courts also extended coverage to corporate officers where their duties were of a supervisory character, such as those of foreman, superintendent of construction, superintendent of a department, and even, with near unanimity, a *general manager,* since these are all jobs that, in ordinary circumstances, would make the holder an employee. (Emphasis added.)

We find no merit in the first point argued by appellant that there is no substantial evidence to support the finding of employer-employee relationship in this case.

## II

The appellants also argue that appellee has failed to prove that Craig Stephen Richard is entitled to benefits. The appellants cite *Roach Mfg. Company* v. *Cole,* 265 Ark. 908, 582 S.W. 2d 268 (1979) in their brief. That holding is against their position here.

The *Roach* case, *supra,* is squarely in point relative to this claim. To understand the *Roach* case, *supra,* however, a review of the applicable law is in order. Section 10 (Ark. Stat. Ann. § 81-1310) of the Act formerly provided that compensation for death of an employee shall be paid to those persons who were wholly dependent upon him. In the case of *Chicago Mill and Lumber Company* v. *Smith,* 228 Ark. 876, 310 S.W. 2d 803, the Arkansas Supreme Court held that although the child of the decedent was not receiving support from her father at all, nonetheless she was entitled to benefits. The Arkansas Supreme Court said:

> "We believe the legislature used the term 'wholly dependent' in the sense of applying to those ordinarily recognized in law as dependents, and this would certainly include wife and children."

The Supreme Court based its ruling in the *Chicago Mill* case, *supra,* upon a proposition that a father has a duty to support his minor children, and consequently the child becomes entitled to workers' compensation benefits based upon this *duty* rather

than based upon *any actual support.* At that time the legislature had defined a dependent to be a person "wholly dependent" upon the decedent.

In 1976 the legislature amended Section 10 to include the words "and actually", making Section 10 read as follows:

> ". . . compensation for the death of an employee shall be paid to those persons who were wholly *and actually* dependent upon him . . . ."

The *Roach* case then construed the Act as now amended, using the words "and actually". In the *Roach* case the child of the decedent father was not actually dependent upon him as the decedent father had not contributed to the child's support during the eleven months the decedent father had been separated from the child's mother. The Supreme Court reaffirmed its decision in the *Chicago Mill Company* case, *supra,* and stated that the test of "wholly dependent" was met by the *duty of support.* The "actual support" included and embraced "reasonable expectation of support". The Supreme Court said in the *Roach* case, *supra,* that the child had a "reasonable expectation of support" notwithstanding the fact that her decedent father had not supported her since he had separated from her mother, a period of eleven months.

The case at bar is somewhat stronger than the *Roach* case, *supra.* In the case at bar there is undisputed testimony that the decedent regularly contributed to the support of his mentally deficient child. Since he did this, the test of "wholly dependent" is met with the definition in the *Chicago Mill Company* case, *supra* which was reaffirmed by the *Roach* case, *supra.* The test of "actual" dependency has been satisfied beyond the definition of the *Roach* case in that Frank Richard contributed to the support of his child and the child was "actually" dependent upon his father.

The Workers' Compensation Act is highly remedial and is entitled to a liberal construction; it should be accorded a broad construction in doubtful cases resolved in favor of compensation. *McGehee Hatchery* v. *Gunter,* 237 Ark. 448, 373 S.W. 2d 401 (1963). The Act should be broadly and liberally construed, and doubtful cases resolved in favor of the claimant.

*Cummings* v. *United Motor Exchange,* 236 Ark. 735, 368 S.W. 2d 82 (1963).

We find substantial evidence to support the findings and awards of the Commission.

Affirmed.

Supplemental opinion on denial of rehearing
delivered March 19, 1980

JAMES H. PILKINTON, Judge. Under Point II of our original opinion we incorrectly referred to Section 15 [Ark. Stat. Ann. § 81-1315(c)], the statute being discussed, as Section 10 (Ark. Stat. Ann. § 81-1310) of the Arkansas Workers' Compensation Act. One purpose of this supplemental opinion is to correct this citation.

Since our initial opinion, the Arkansas Supreme Court has provided further clarification of Ark. Stat. Ann. § 81-1315(c) (Repl. 1976) in the case of *Doyle's Concrete Finishers et al* v. *Moppin, Guardian, et al,* 268 Ark. 167, 594, S.W. 2d 243 (1980). We are fully aware of the holding in *Doyle's Concrete Finishers* that the dependency of a minor child is no longer a *conclusive* presumption in workers' compensation cases. However, the recent decision in the *Doyle* case, *supra,* does not call for a change in the result of the case before us. Here the Commission found that the child, Craig Richard, was dependent upon his father, Frank Richard. There was uncontroverted testimony that the deceased father contributed to the support of his son although the parents were divorced and the child was in the custody of the mother.

As pointed out in our original opinion, we find substan-

tial evidence to support the findings and award of the Commission; therefore, we adhere to our holding affirming this case.

Rehearing denied.