Wade FINLEY, Deceased; Amy Finley *v.* FARM CAT, INC.,
Cunningham Lindsey, TPA, and Death & Permanent Total
Disability Trust Fund

CA 08-222                                                    288 S.W.3d 685

Court of Appeals of Arkansas
Opinion delivered October 22, 2008

*Kenneth E. Buckner*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Lee J. Muldrow* and *Gary D. Marts, Jr.*, for appellees.

L ARRY D. VAUGHT, Judge.  Appellant Amy Finley appeals a decision of the Workers' Compensation Commission find-

ing that Wade Finley III, the son of Amy and her deceased husband Wade Jr., is not entitled to dependency benefits. We affirm.

The facts in this case are undisputed. Amy and Wade Jr. were married on October 6, 1990. Unable to become pregnant, the couple met with physicians to discuss fertility treatments in April 2001. On May 1, 2001, they executed a consent form outlining the terms of their participation in the In Vitro Fertilization (IVF) and Embryo Transfer Program. In June of 2001, physicians produced ten embryos using Amy's eggs and Wade Jr.'s sperm. On July 2, 2001, two embryos were implanted into Amy's uterus. Four of the eight remaining embryos were cryopreserved (frozen). The other four embryos were discarded. A pregnancy was confirmed after this procedure; however, Amy soon miscarried.

On July 19, 2001, Wade Jr. was fatally electrocuted while in the course and scope of his employment with appellee Farm Cat, Inc. The accident was accepted as compensable by Farm Cat's workers' compensation carrier and benefits were paid to Amy.

On June 26, 2002, approximately eleven months after her husband's death, Amy had two of the frozen embryos thawed and implanted into her uterus. A pregnancy was confirmed on July 10, 2002. Amy gave birth to Wade III on March 4, 2003. Thereafter, Amy filed for workers' compensation benefits,[1] contending that Wade III was the dependent child of Wade Jr. and was entitled to

---

[1] In a related matter, Amy filed for "child insurance benefits" from the Social Security Administration on behalf of Wade III and was denied benefits by the Appeals Council. She appealed the denial to the United States District Court for the Eastern District of Arkansas. *Finley v. Astrue*, No. 4:06CV01576 (June 13, 2007). The parties in that case agreed that regarding whether Wade III was entitled to social security benefits, the determinative issue was whether he was entitled to inherit from Wade Jr. under Arkansas intestacy law. *Id.* at 5. As such, the parties filed a joint motion to certify the following question of law to the Arkansas Supreme Court:

> Does a child, who was created as an embryo through IVF during his parents' marriage, but implanted into his mother's womb after the death of his father, inherit from the father under Arkansas intestacy law as a surviving child?

The district court granted the motion to certify the question. Our supreme court accepted the certification. In *Finely v. Astrue*, 372 Ark. 103, 270 S.W.3d 849 (2008), the court declined the request to define "conception." Instead, relying on the legislative intent of the posthumous-heir statute, it answered the question in the negative.

weekly compensation benefits pursuant to Arkansas Code Anno-
tated section 11-9-527(c) (Repl. 2002). Appellees controverted
the claim.

The Administrative Law Judge issued an opinion finding
that the preponderance of the evidence established that Wade III
was entitled to dependency benefits. On appeal, the Commission
reversed the opinion of the ALJ, denying and dismissing the claim.
Amy timely appealed from the Commission's opinion.

On appeal, Amy contends that substantial evidence fails to
support the Commission's finding that Wade III, the legitimate
posthumous child of Amy and Wade Jr., is not entitled to depen-
dency benefits under the Arkansas Workers' Compensation Act.
She also contends that the Commission, in denying Wade III these
benefits, violated his constitutional rights.

First, Amy argues that there is a lack of substantial evidence
supporting the Commission's decision to deny section 11-9-
527(c) dependency benefits to Wade III because he is the couple's
legitimate son; he was "conceived" prior to Wade Jr.'s death; and
Wade Jr. was killed in the course and scope of his employment
with Farm Cat. When reviewing a decision of the Commission,
we view the evidence and all reasonable inferences deducible
therefrom in the light most favorable to the findings of the
Commission and affirm that decision if it is supported by substan-
tial evidence. *Lawhon Farm Servs. v. Brown*, 60 Ark. App. 64, 958
S.W.2d 538 (1997). The issue is not whether we might have
reached a different result or whether the evidence would have
supported a contrary finding; if reasonable minds could reach the
Commission's conclusion, we must affirm. *Id.*

Section 11-9-527(c) provides death benefits for dependents
of workers who die in work-related accidents. The statute states,
"compensation for the death of an employee shall be paid to those
persons who were wholly and actually dependent upon the de-
ceased employee. . . ." Ark. Code Ann. § 11-9-527(c). Subsection
(h) provides that "[a]ll questions of dependency shall be deter-
mined as of the time of the injury." Ark. Code Ann. § 11-9-
527(h). Dependency is a fact question to be determined in light of
the surrounding circumstances. *Fordyce Concrete v. Garth*, 84 Ark.
App. 256, 139 S.W.3d 154 (2003). When the Commission makes
a finding of fact, that finding carries the weight of a jury conclu-
sion. *Id.*

Amy argues that Wade III was a person at the time of the
injury because he was a posthumous child conceived prior to

Wade Jr.'s death. As support, she cites a provision of the probate code, section 28-9-209(c), that defines legitimate children for the purpose of intestate succession.[2] Based on section 28-9-209(c), Amy argues that Wade III, "was, as a matter of science, 'conceived' during the marriage" (when Amy's egg was fertilized with Wade Jr.'s sperm), although not by artificial insemination but by IVF. She further argues that there is clear evidence that Wade Jr. consented to the IVF procedure based on the documents he signed to initiate the process. Amy contends that "the embryo was wholly and actually dependent" on Wade Jr. at the time of the injury as evidenced by the fact that the couple "had to pay UAMS a fee to store the fertilized embryos." The Commission disagreed and found that at the time of Wade Jr.'s death, Amy was the only person wholly and actually dependent upon Wade Jr.

The parties devote considerable effort to arguing whether Wade III was a "person" at the time of Wade Jr.'s injury. Notably, "person" is not defined in the Arkansas Workers' Compensation Act; however, section 11-9-527(c) does name those potentially entitled to dependency benefits. They include: widow, widower, child, parents, brothers, sisters, grandchildren, and grandparents. Ark. Code Ann. § 11-9-527. "Child" is defined in the Act as "a natural child, *a posthumous child*, a child legally adopted prior to injury of the employee, a stepchild, an acknowledged illegitimate child of the deceased or of the spouse of the deceased, and a foster child." Ark. Code Ann. § 11-9-102(2) (Repl. 2002) (emphasis added). "Posthumous child" is not defined by the Act. Further, unlike intestate succession under the probate code, the Workers' Compensation Act has no statutory language requiring that a "posthumous child" be "conceived" before the claimant's death.[3]

Nonetheless, it is unnecessary for us to decide whether Wade III was a "person" at the time of Wade Jr.'s injury. Assuming for the sake of argument that he was a "person," we

---

[2] Arkansas Code Annotated section 28-9-209(c) (Repl. 2004) provides in pertinent part:

> (c) Any child conceived following artificial insemination of a married woman with the consent of her husband shall be treated as their child for all purposes of intestate succession. Consent of the husband is presumed unless the contrary is shown by clear and convincing evidence.

[3] Our supreme court has defined a "posthumous child" as: "A child born after a parent's death." *Finley*, 372 Ark. at 109 n.4, 270 S.W.3d at 853 n.4 (citing *Black's Law Dictionary* 255 (8th ed. 2004)).

hold that there is substantial evidence to support the Commission's decision that Wade III was not "wholly and actually dependent" on Wade Jr. at the time of the injury.

In *Lawhon Farm Services*, we discussed the application of section 11-9-527(c). We noted that in cases where children are not living with the employee at the time of the employee's death, there must be some showing of actual dependency. *Lawhon Farm Servs.*, 60 Ark. App. at 74, 958 S.W.2d at 542. "Actually dependent" does not require total dependency but rather a showing of actual support or a reasonable expectation of support. *Id.*, 958 S.W.2d at 542. Dependency is an issue of fact, and the issue is to be resolved based upon the facts present at the time of the compensable event; it may be based upon proof of either actual support from the decedent or a showing of a reasonable expectation of support. 60 Ark. App. at 74-75, 958 S.W.2d at 542.

Amy argues that she and Wade Jr. were providing actual support to Wade III because they paid fees to store the frozen embryos. This argument is not persuasive. Storage fees for a frozen embryo are not the type of actual support or reasonable expectation of support envisioned by the statutory language as construed in the *Lawhon* case. There, we considered support in the form of food, clothes, transportation, housing, utilities, furniture, and toys. *Id.* Though storage fees are akin to housing, we decline to adopt this creative reading of the statute.

In the case at bar, there is no evidence in the record demonstrating that at the time of his father's death, Wade III was "wholly and actually dependent" upon his father or that he had a reasonable expectation of support from him. The facts establish that Wade III was a frozen embryo at the time of his father's death and was not born until almost two years after his father's death. His mother was not pregnant with him until almost one year after his father's death. As such, we hold that substantial evidence supports the Commission's finding that Wade III was not wholly and actually dependent upon his father and accordingly, that he was not entitled to dependency benefits under section 11-9-527(c).

Amy's second point is that the Commission's denial of dependency benefits to Wade III violates his constitutional rights under the Due Process and Equal Protection Clauses. Specifically, she argues that the method of Wade III's conception, through IVF, "created a whole new class of children who will be deprived of

certain rights solely because they were not conceived and born in a 'normal' or 'accepted' manner."

■    This argument is not preserved for review. There was no mention of this argument at the hearing before the ALJ, and the ALJ did not rule on it. Amy did not argue this point to the Commission. While her brief to the Commission generally states, "[t]o treat him any other way would be to discriminate against him and others similarly situated and deny him due process and equal protection," this argument was not developed beyond a mere conclusory statement. And again, the Commission did not rule on this argument.

When an issue was not raised below, it is not preserved for appellate review. *Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006); *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). Further, where an argument is not fully developed at the trial level or on appeal, it is not preserved for review. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004).

We note that Amy admits that this argument was not raised below. However, she argues that making the constitutional argument to the Commission would have been "futile and meaningless" because the Commission lacked authority to overrule the Arkansas Supreme Court or make rulings about the probate code. We disagree. Even arguments of constitutional dimension must be argued below if they are to be preserved for appeal. *Green v. Smith & Scott Logging*, 54 Ark. App. 53, 922 S.W.2d 746 (1996). Because Amy did not raise the constitutional argument, it is not preserved for appeal.

Affirmed.

ROBBINS and MARSHALL, JJ., agree.